1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7            EASTERN DISTRICT OF CALIFORNIA

8

9   BAKERSFIELD FIREMEN LABOR          )     1:03-cv-5645 OWW TAG
    ORGANIZATION, a non-profit         )
10  corporation also known as          )     FINDINGS OF FACT AND
    BAKERSFIELD FIREFIGHTERS LABOR     )     CONCLUSIONS OF LAW
11  ORGANIZATION,                      )
                                       )
12               Plaintiff,            )
                                       )
13        v.                           )
                                       )
14  CITY OF BAKERSFIELD, a             )
    governmental entity, ALLEN         )
15  TANDY, in his official capacity    )
    as the City Manager of the CITY    )
16  OF BAKERSFIELD,                    )
                                       )
17               Defendants.           )
                                       )
18  _____    )

19

20

21        This case was tried to the Court sitting without a jury from

22  January 25 through January 27, 2005.  The parties presented oral

23  arguments as to the evidence and applicable law on January 27 and

24  28, 2005.  The parties submitted proposed Findings of Fact and

25  Conclusions of Law which were electronically filed February 1 and

26  8, 2005, when the matter was submitted for decision.

27        Plaintiffs were represented by Richard J. Pabst, Esq.

28  Defendants were represented by Marderosian, Cercone, Lehman &

1  Armo by Jacob J. Rivas, Esq.  Testimony was taken and evidence
2  presented in open court, followed by the oral arguments of the
3  parties.  After having fully considered the proofs of the parties
4  and the applicable law, the following Findings of Fact and
5  Conclusions of Law are entered:

6

7              I.  <u>FINDINGS OF FACT</u>

8       To the extent that any Finding of Fact can be interpreted as
9  a Conclusion of Law, it is intended to be so construed.

10

11 A.  <u>PARTIES</u>

12      1.  Plaintiff Bakersfield Fireman Labor Organization, a
13 non-profit corporation, is a public service employee union
14 incorporated for, among other things, the purpose of representing
15 Bakersfield City Fire Fighters in employee relations and
16 bargaining with the City of Bakersfield.  UF 67.

17      2.  The Plaintiff in this case represents the Bakersfield
18 Fire Department Battalion Chiefs ("Battalion Chiefs"), for whom
19 this action is prosecuted.  The Battalion Chiefs maintain that
20 they are not executive employees and not exempt from the
21 provisions of the Fair Labor Standards Act ("FLSA").

22      3.  Defendant, the City of Bakersfield ("City"), a
23 municipal corporation, is a charter city under the laws of the
24 State of California, and a public entity within the meaning of
25 California law.  The City's fire department is the employer of
26 the Battalion Chiefs for whom this action is prosecuted.

27      4.  In March 1994 all Bakersfield Fire Department Battalion
28 Chiefs joined the membership of Plaintiff Bakersfield Fireman

                              2

1  Labor Organization.

2      5.   Since approximately March 1994, the parties have met
3  and conferred and bargained in good faith for compensation to
4  Battalion Chiefs at a "straight-time" rate for overtime shifts/
5  hours.   UF 68.

6      6.   Defendant's Exhibit H, Bakersfield Fire Department
7  Policies, is received in evidence.   Stipulation No. 2.

8      7.   City Resolution No. 1-97, Defendant's Exhibit A is
9  received in evidence pursuant to stipulation of the parties.
10  Stipulation No. 3.

11      8.   The 2001 Memorandum of Understanding, Exhibit B, is
12  received in evidence pursuant to stipulation.   Stipulation No. 3.

13      9.   The Parties stipulated during trial that Plaintiffs'
14  Exhibits Nos. 1-6 and Defendants' Exhibits A-O are admissible and
15  those exhibits were received in evidence.

16

17  B.   MEMORANDUM OF UNDERSTANDING PROVISIONS

18      10.  The Memorandum of Understanding ("MOU"), Defendants'
19  Exhibit B, effective January 1, 1996 - December 31, 1998, between
20  the Bakersfield Fire Fighters Labor Organization Fire Supervisory
21  Unit (Unit No. 6) and the City of Bakersfield, is alleged by the
22  parties to be applicable to this case.   The MOU, Defendant's
23  Exhibit D, effective January 1, 2001, through December 31, 2004,
24  is also alleged to be applicable to this case. According to the
25  MOUs, the union members include persons occupying the job
26  classifications of Fire Captain, Battalion Chief, Fire
27  Marshal/Training Officer.

28      11.  On January 8, 1997, all Fire Department Battalion

1  Chiefs were members of the Fire Supervisory Unit of the City.   UF
2  52.

3       12.   The MOUs set salaries and related benefits for all
4  covered members.

5       13.   All battalion chiefs are salaried by the City of
6  Bakersfield.   Resolution No. 1-97 City of Bakersfield.   UF 51.

7       14.   The rate of compensation to be paid to Battalion Chiefs
8  was a subject of bargaining between the City and the Bakersfield
9  Firemen Labor Organization and resulted in Resolution No. 1-97.
10  UF 53.

11       15.   The MOUs state that "in consideration for working
12  additional fire suppression shifts, in addition to regularly
13  scheduled duty shifts, Fire Battalion Chiefs will be compensated
14  at straight time for each additional suppression shift worked or
15  portion thereof."   (Defendant's Exhibit B § 1.36; Defendant's
16  Exhibit D, § 1.37).   This is a matter of contract and does not
17  make such overtime payments required by the FSLA.   The MOUs
18  agreed Battalion Chiefs will be compensated at straight time for
19  each additional suppression shift worked or portion thereof.   UF
20  54.

21       16.   From 1994 to present, Battalion Chiefs have been
22  compensated for their employment services on a salary basis at a
23  rate in excess of the minimum set forth in paragraph (f) of 29
24  C.F.R. § 541.1.   Their compensation is in excess of $455.00 per
25  week, exclusive of board, lodging, or other facilities in
26  compliance with the FLSA.   UF 64; Stipulation No. 1.

27       17.   The Department of Labor's Field Operation Handbook
28  authorized extra compensation to be paid for overtime to an

                                    4

exempt employee on any basis, including straight time or a flat sum without loss of the exempt status.  UF 70.

18.  The fire captains received overtime compensation for duties performed in excess of regularly scheduled shifts through December 31, 2004.

C.  **FIRE DEPARTMENT STRUCTURE**

19.  Under the authority of Section 185(3) of the Charter of the City of Bakersfield, Civil Service Rules and Regulations have been adopted for the fire department of the City of Bakersfield.

20.  Under Rule 3, Classified Service, a schedule of five grades is established:

**SCHEDULE OF GRADES**

GRADE 1 - Firefighter.

GRADE 2 - Fire Engineer.

GRADE 3 - Fire Captain.

GRADE 4 - Battalion Chief.

Fire Marshal.

Training Officer.

GRADE 5 - Deputy Chief.

Assistant Chief

Non-Safety Classifications shall be established by the Board as required.

21.  The Bakersfield Fire Department is comprised of two battalions.  The Battalion Chiefs have direct command of the two battalions.  UF 1.

22.  The Fire Department is under the command of the Fire Chief.

23.   The Office of the Fire Chief is located at the Administrative Office of the Department where the Fire Chief is in attendance during office hours, except during Saturday, Sunday, and holidays and when not in otherwise engaged on business of the Department or on leave of absence.  Department office hours are 0800 to 1700 hours (8:00 a.m. to 5:00 p.m.).

24.   According to the Rules and Regulations of the Bakersfield Fire Department, effective October 4, 2001, (Defendant's Exhibit O), the officers and personnel of the Operations Division were to be divided into three (3) Platoons, to be designated "A Platoon," "B Platoon," and "C Platoon" respectively.

25.   The rules and regulations provide that "Each platoon shall be further divided into battalions to be designated 'Battalion 1' and 'Battalion 2.'"  These platoons shall be on duty alternatively for twenty-four hour periods.

26.   There was no testimony that the Bakersfield Fire Department has any such platoons.

27.   There was testimony that each battalion within the City of Bakersfield is comprised of at least five engine companies and truck companies.

28.   A fire company can consist of an engine company, which includes a fire captain, a fire engineer, and at least one fire fighter, or a ladder company, comprised of a fire captain, a fire engineer, and one or two fire fighters.

29.   There are six Fire Suppression Battalion Chiefs that command the two battalions which engage in fire suppression and general operations.

6

1      30.    There is one "Training Battalion Chief" and one

2   "Administrative Battalion Chief."[1]

3      31.    The Training Battalion Chief and the Administrative

4   Battalion Chief work from 8:00 a.m. to 5:00 p.m., 40 hours per

5   week, at the administrative headquarters of the fire department

6   located at Olive Avenue in the City of Bakersfield.

7      32.    The City of Bakersfield, served by its Fire Department,

8   comprises 120 square miles and 13 fire stations.   Two battalion

9   chiefs stationed at stations 1 and 6 command the suppression-

10  response activities.

11     33.    Battalion Chief Wiggins reported that the Bakersfield

12  Fire Department has 18 engines, 3 ladder trucks, 4 squad cars, a

13  light and air van, a decontamination trailer, and an additional

14  20-25 vehicles.

15

16  D.   DUTIES AND RESPONSIBILITIES OF THE TRAINING BATTALION CHIEF

17     34.    Battalion Chief Tyler Hartley, who has served the

18  Bakersfield Fire Department since 1988 (sixteen years) is a

19  Training Battalion Chief with respect to organization and

20  planning as described in Exhibit F.   According to Defendant's

21  Exhibit F, the official job description for the Battalion

22  Chief/Training Officer, duties and responsibilities include, but

23  are not limited to: "responsibility for work of considerable

24  difficulty involving supervision and administration of department

25  operations, including command of a fire suppression battalion,

26  ────────────────

27        [1] The Administrative Battalion Chief and Training Battalion
    Chief are referred to by their full titles.   Fire Suppression
28  Battalion Chiefs referred to as "Battalion Chiefs."

                              7

specialized work in administration, a continuous training program, enforcing fire prevention standards, laws and ordinances, arson investigations, and promoting public cooperation, including other administrative assignments as required."

35.   Other duties of the Training Battalion Chief include, but are not limited to:  formulating plans; instructing and supervising all fire fighting training activities; evaluating activities and preparing reports; conducting multi-company drills, company in-service schools and drills, and special training; preparing training schedules, information sheets, job sheets, lesson plans, and tests; maintaining training records for individual staff; advising and assisting in the installation and approval of protocols on the use of equipment; conducting classroom lectures, presentations and demonstrations on fire protection and fire fighting methods; performing and demonstrating fire fighting procedures; assuming responsibility for major fires and multiple alarms on call-back assignment; assisting in preparing budgets; assisting in preparing, conducting, and evaluating examinations; making personal appearances for public speaking and fire fighting demonstrations; engaging in departmental planning as required; and implementing fair employment commission requirements.

36.   The Training Battalion Chief assures that the training provided to fire department personnel complies with applicable laws and regulations.

37.   Article 5 of the Bakersfield Fire Department Rules and Regulations, Defendant's Exhibit O, demonstrates that the

1  Training Battalion Chief has complete control of all drills.

2      38.   Chief Hartley also provides hazardous materials
3  ("hazmat") training and provides a budget for hazmat training
4  activities.   There is no pre-determined amount of money for
5  hazmat activities.

6      39.   The training budget is separate from the hazmat budget.
7  The budget is in the hundreds of thousands of dollars; however,
8  the Training Battalion Chief makes recommendations and provides
9  input, but does not otherwise formulate the training budget.

10     40.   The budget recommendations are submitted to the Fire
11 Chief for final approval and generally followed.

12     41.   Chief Hartley has drafted two to four policies and/or
13 procedures, including the rapid intervention and awards and
14 recognition policies.

15

16 E.   DUTIES AND RESPONSIBILITIES OF THE
17      ADMINISTRATIVE BATTALION CHIEF

18     42.   Battalion Douglas Chief Greener, who has served the
19 Bakersfield Fire Department since 1988 (about 16 years), became a
20 Battalion Chief in 2001, and has been the Administrative
21 Battalion Chief for about seven months.

22     43.   The Administrative Battalion Chief supervises the
23 maintenance division, technical rescue program, weapons of mass
24 destruction preparedness and training, and large equipment.   UF
25 48.

26     44.   The Administrative Battalion Chief is the public
27 information officer and the emergency medical services ("EMS")
28 coordinator for the Bakersfield Fire Department.   The

Administrative Battalion Chief also circulates a newsletter, engages in grant writing, and implements a personnel accountability program.  The Administrative Battalion Chief's public information duties include spending time with the media, providing information in the form of press releases, and distributing media updates.

45.   The Administrative Battalion Chief spends most of his time on information services and has discretion to speak for the Bakersfield Fire Department to the public and the media.

46.   The Administrative Battalion Chief interacts directly with the media, answers questions, and is selected for the position based on ability, composure, and background in dealing with the media as a public information representative

47.   The Administrative Battalion Chief is the chair of the emergency response committee.  The responsibilities of the committee include basic life support, maintenance of certificates of med techs, and technological services.  The Administrative Battalion Chief also acts as liaison to the Kern County EMS department.  Duties also include responsibility for the EMS training the of the Bakersfield Fire Department.

48.   The Administrative Battalion Chief recommends EMS equipment for acquisition.

49.   The Administrative Battalion Chief directly purchases more than $20,000 in value of equipment or other materials for the EMS program.  Purchase requests are channeled through the Fire Department Business Manager and then to the City Manager's Office.

50.   Grant writing consumes approximately 100 hours per year

1   (about two weeks).   The Administrative Battalion Chief researches

2   potential grants, drafts grant proposals, and submits the

3   proposals to the Fire Chief for approval.   Chief Greener has

4   never had a draft rejected by the Fire Chief.

5        51.   The Administrative Battalion Chief's responsibility for

6   the personnel accountability system, which is implemented by the

7   County of Kern, includes seeing that the electronic equipment is

8   functional and that the appropriate fire department record

9   keeping is performed.

10        52.   The Administrative Battalion Chief also is responsible

11  for awards and recognition.   He heads the awards committee and

12  reviews the program on an annual basis, to recognize and award

13  meritorious conduct by Bakersfield Fire Department personnel and

14  members of the public.

15        53.   The Administrative Battalion Chief does not have direct

16  subordinates; however, an administrative captain will soon be

17  assigned to his command.

18        54.   The Administrative Battalion Chief position has been in

19  existence for approximately three and one-half years.   Battalion

20  Chief Greener has been in the position for seven months.   No

21  formal job description for the Administrative Battalion Chief was

22  entered into evidence.

23

24  F.   <u>FIRE SUPPRESSION BATTALION CHIEFS</u>

25        55.   Deputy Chief of Administration Gary Hutton has been

26  with the Bakersfield Fire Department since October of 1979.   He

27  has served for four years as a fire fighter, three years as a

28  fire engineer, three years as a fire captain, eight years as a

1  Battalion Chief, and has been Deputy Chief for six years.

2      56.   Deputy Chief Hutton has performed the duties of and is
3  personally knowledgeable of the responsibilities of a Battalion
4  Chief from direct experience performing as a Battalion Chief and
5  as a deputy chief with authority over Battalion Chiefs.

6      57.   Deputy Chief Dean Clayson, who is in charge of
7  suppression services, described the emergency duties of Battalion
8  Chiefs he oversees.  Deputy Chief Clayson has been with the
9  Bakersfield Fire Department since 1982, achieved the rank of
10 Battalion Chief in 1995 and preformed the duties of Battalion
11 Chief for approximately four years.  He has personal knowledge of
12 those duties.  The emergency activities include fire response,
13 vehicle recovery, hazardous materials and swift water rescues.

14     58.   Battalion Chiefs Gary Turner, Jerry Gamble, and Ken
15 Wiggins, who are fire suppression Battalion Chiefs, testified to
16 general emergency and administrative duties of Battalion Chiefs.
17 Battalion Chief Turner has been with the Bakersfield Fire
18 Department since 1979 and has been a Battalion Chief since 1991.
19 Battalion Chief Gamble has been with the Fire Department since
20 1983 and has been a Battalion Chief since 1999.  Battalion Chief
21 Wiggins has been a Battalion Chief for approximately 5 years.

22     59.   Battalion Chiefs have a number of duties and
23 responsibilities that can generally be divided into "emergency
24 duties" and "non-emergency duties."

25     60.   Approximately 14% of all emergency calls involve fires
26 and 86% of all calls involve non-fire activities.  The fire calls
27 are essentially non-medical.  Most non-fire involve medical
28 issues.  Rescue calls, vehicle accidents, and rescue plus medical

1    services are involved in non-fire duties.

2    G.    Emergency Duties of Fire Suppression Battalion Chiefs

3          61.   A Battalion Chief is charged with the duty to arrive on

4    the scene of a fire or other fire department response and to

5    assume command of the incident.  The Battalion Chief is the in-

6    field strategic commander within the hierarchy of the Bakersfield

7    Fire Department, of any emergency response by the Bakersfield

8    Fire Department.

9          62.   In the hierarchy of command, all fire captains

10   commanding engine or ladder companies report to the battalion

11   chief who is charged with command responsibility for all fire

12   department emergencies.

13         63.   The majority of calls are single-engine responses.

14   Battalion Chiefs do not usually respond to single company calls;

15   in those instances, the captain is the Incident Commander.

16

17        Battalion Chiefs' General Duties as Incident Commander

18         64.   Upon arrival at a scene, a Battalion Chief determines

19   what actions have been taken by any fire captains who are in

20   command on scene and after review, determines what response and

21   tactics are needed, including whether to bring additional

22   resources and personnel to deal with any emergency and on-scene

23   conditions.

24         65.   The Battalion Chief next establishes an incident

25   command post.

26         66.   As Incident Commander, a Battalion Chief is the

27   coordinator of all Bakersfield Fire Department resources and

28   efforts brought to bear on any incident, including supervising

                                  13

1  and directing all captains, fire engineers, and fire fighters on-
2  scene.

3      67.   Battalion Chiefs have authority to request additional
4  personnel and/or resources for fire suppression at any incident.
5  UF 34.

6      68.   Battalion Chiefs have the authority to de-escalate the
7  number of personnel and resources at a particular fire scene.   UF
8  35.

9      69.   In the vast majority of emergency incidents, Battalion
10  Chiefs are the ultimate commander and are not relieved of
11  incident command by a superior officer.   UF 43.

12      70.   Chief Clayson was unaware of any incident where a
13  Battalion Chief was replaced by a Deputy Chief or higher
14  authority, no matter how large or serious the incident.

15      71.   The Battalion Chief, as Incident Commander, formulates
16  the strategy to effectively deal with the incident, determines
17  whether offensive or defensive actions are to be taken;
18  determines the nature and extent of the resources to be applied
19  to the incident; develops tactics, and assigns captains and their
20  companies in the most effective way to resolve the incident.

21      72.   The Battalion Chiefs retain sole discretion to pull
22  companies out of their first line duties where a multi-equipment
23  response is required.   The total coverage in the metropolitan
24  area, anticipating successive calls, is within the sole
25  discretion of the Battalion Chiefs.

26      73.   Aircraft response is called in only by a Battalion
27  Chief or above.   This is a well-defined policy, although not
28  written.

74.   In de-escalating the response to any incident, it is the Battalion Chief who determines to prioritize the order in which equipment is withdrawn from the scene and to formulate and implement a demobilization plan.

75.   After each incident the Battalion Chief conducts a critique and monitors, after critical analysis, the lessons learned from each incident.

76.   Battalion Chiefs have the authority to request that an investigator conduct an arson investigation into the cause of any fire.   This includes instances where a Battalion Chief does not need permission from a superior to request an arson investigation.   UF 42.

Incident Commander Duties as Liaison with Other Agencies

77.   Battalion Chiefs are responsible for coordinating actions of other public agencies that assist in certain emergencies.   UF 13.

78.   It is the Battalion Chief who is responsible to act as a liaison with other agencies, such as the Bakersfield Police Department, the Water Department, Emergency Medical Services, the County Fire Department, and the United States Forest Service.

79.   Where multi-agency responses are entailed, if the fire is in the City, the Battalion Chief retains overall command as Incident Commander.

80.   Battalion Chiefs have the authority to request resources from other agencies, including the Kern County Fire Department, Kern County Sheriff's Department, Bakersfield Police Department, California Highway Patrol, and Hall Ambulance,

15

1    depending on the nature of the emergency.  In any multi-agency

2    response to an emergency within the City of Bakersfield,

3    Battalion Chiefs assume incident command, irrespective of other

4    responding personnel from other agencies.

5

6         **Battalion Chiefs do not Perform Manual Labor**

7         81.  Battalion Chiefs do not perform manual labor when

8    responding to a fire scene.  UF 20.

9         82.  Battalion Chiefs do not pick up an axe, direct a hose,

10   or climb a ladder at any emergency scene.  As Incident

11   Commanders, they are required to oversee the overall tactical and

12   strategic plan is carried out to bring the incident to

13   conclusion.  UF 21.

14        83.  Captain Paul Caprioli acknowledged Battalion Chiefs do

15   not swing axes, pull nozzles off, although once eight years ago a

16   Battalion Chief used a nozzle.

17        84.  Battalion Chiefs do not pull ceilings down, use

18   chainsaws, or otherwise engage in direct fire suppression or fire

19   fighting activities.  Battalion Chiefs who assume incident

20   command normally do not utilize a self-contained breathing

21   apparatus.  UF 44.

22        85.  The Battalion Chief's command status is important

23   because the fire department does not want command level personnel

24   doing manual labor, to leave them free to maintain command

25   responsibility for the safety of all present at any incident.  If

26   a Battalion Chief were to engage in manual labor, this would be a

27   safety concern and would expose the Battalion Chief to risks that

28   are not to be visited upon Incident Commanders.

1      86.   The Battalion Chief must be free to exercise executive
2  command authority in carrying out the fire fighting and emergency
3  response mission, which would be compromised if the Battalion
4  Chief were involved in direct fire fighting, emergency response,
5  or other on-the-ground incident responsibilities.

6

7       **Battalion Chiefs' Miscellaneous Emergency Duties**

8      87.   The Battalion Chief is vested with discretion to
9  marshal and commit resources and personnel for strike teams,
10  where the Bakersfield Fire Department will cooperate in concert
11  with fire departments from other agencies on man-power-intensive
12  emergencies.  *See* Policy 130.

13      88.   Under Policy 224, Battalion Chiefs are responsible for
14  preparing news messages which are made available to the press and
15  public.  Battalion Chiefs are responsible for the content of and
16  recording messages and coordinating with news representatives at
17  emergency scenes.

18      89.   In bomb threats, the Battalion Chief is notified and
19  acts as the chief officer on a bomb threat.  The Battalion Chief
20  coordinates any response to a police department request to assist
21  in a bomb threat search.  The Incident Commander in bomb threats
22  is usually the Bakersfield Police Department or Kern County
23  Sheriff's Office.  Exhibit H, Policy 207.

24      90.   Battalion Chief Gamble testified that in a hazardous
25  materials incident, a Deputy Chief assumes command.  In all other
26  incidents, a Deputy Chief may, but usually does not, assume
27  command.

28  ///

17

**H.    Non-Emergency Duties of Fire Suppression Battalion Chiefs**

91.    For non-emergency operations, there are two Battalion Chiefs, one in charge of each of the two battalions, for each of the three daily shifts.

**Constant Staffing**

92.    Each shift Battalion Chief is responsible for constant staffing and all personnel assigned to fire stations throughout the City.

93.    Battalion Chiefs have overall responsibility to preserve adequate coverage within each fire district in the City. UF 40.

94.    The six fire suppression Battalion Chiefs also are responsible for coverage for first-ins.  First-in coverage involves allocating fire companies to districts for which they are primarily responsible.

95.    The Battalion Chiefs are ultimately responsible for maintaining coverage for the entire City of Bakersfield for the response time of all responding fire personnel, and for the safety of the public and personnel at emergency scenes.

96.    The Battalion Chiefs schedule monthly meetings with all captains.  The Battalion Chiefs determine and ensure coverage for first-ins for the times during which captains meetings are held.

97.    Shift Battalion Chiefs are on-duty 365 days per year. In achieving staffing, the shift Battalion Chief sees that union requirements are met; has the ability to call back personnel; continuously adjusts schedules to fill openings as required; and makes the discretionary decision not to recall personnel to leave

18

1  open one or more positions in a fire company.

2       98.   When someone is sick or requests leave, the captain

3  takes the request and the Battalion Chief makes the decision

4  whether to replace or not fill any positions.   The Battalion

5  Chief, after making decisions about staffing, re-delegates to

6  captains the responsibility to implement staffing decisions.

7  This includes implementation of the Memorandum of Understanding

8  call-back system.

9       99.   The Battalion Chief is the primary officer responsible

10  for the "constant staffing" policy and its implementation at the

11  Bakersfield Fire Department.   Exhibit H, Policy Nos. 113, 110,

12  relating to non-emergency call back and shift-trading.

13

14       **Evaluations**

15       100. Battalion Chiefs are responsible for personnel

16  evaluation as to job performance of captain and subordinate

17  personnel.   UF 23.

18       101. Battalion Chiefs write evaluations for fire captains.

19  UF 24.

20       102. Chief Gamble testified that an important responsibility

21  of Battalion Chiefs is the evaluation of captains, which takes

22  considerable time.

23       103. The captains submit performance evaluations of

24  subordinates to Battalion Chiefs.

25       104. Battalion Chiefs review the evaluations written by fire

26  captains of fire captains' direct subordinates.   UF 25.

27       105. Battalion Chiefs ensure all performance evaluations and

28  any remedial recommendations are thoroughly addressed.

19

1    106. Battalion Chiefs are directly involved in promotion of
2    subordinates.

3    107. From 1994 to present, Battalion Chiefs had authority to
4    make suggestions and recommendations as to the advancement/
5    promotion of subordinate sworn employees in the Bakersfield Fire
6    Department.  UF 63.

7    108. Battalion Chiefs prepare subordinates for testing in
8    mock oral boards, which is part of the promotions process.

9    109. Battalion Chiefs sit on and evaluate applicants for
10   promotion on oral promotion boards.

11   110. Battalion Chiefs devise testing for promotional exams
12   for ranks from engineer to fire captain.  UF 47.

13   111. Chief Greener and Chief Clark developed the Awards and
14   Recognition program.  *See* Policy 138.  The Awards Program is to
15   recognize outstanding performance by fire department personnel or
16   the public beyond the call of duty.  Battalion Chiefs evaluate
17   and have discretion to decide who receives such awards.

18   112. Battalion Chiefs represent the Bakersfield Fire
19   Department at awards ceremonies and as public information
20   officers.

21

22   **Discipline**

23   113. From 1994 to present, Battalion Chiefs had authority to
24   make suggestions and recommendations to discipline subordinates
25   and sworn Fire Department employees, up to and including
26   termination of employment in the Bakersfield Fire Department.  UF
27   62.

28       114. If discipline more than consultation is required, the

20

1  Battalion Chief meets with human resources department and/or the
2  City Attorney of Bakersfield to discuss and decide the
3  appropriate punishment.

4      115. Thirty percent of all disciplinary recommendations are
5  made by Battalion Chiefs.

6      116. The Deputy Chiefs maintain a history of discipline,
7  ultimately the Fire Chief imposes discipline such as suspension,
8  reduction in pay, or termination.  The Battalion Chief suggests
9  punishment, but it is a recommendation.

10     117. The disciplinary recommendations by the Battalion
11 Chiefs are typically followed.

12     118. Battalion Chiefs attend disciplinary meetings between
13 disciplined employees, union representatives, and/or an attorney,
14 and a deputy chief.  UF 26.

15     119. Battalion Chiefs are responsible for all fire
16 department property and equipment to see that it is kept and
17 maintained in working condition.  Battalion Chiefs can order
18 remedial training in the event of lapses in maintenance of
19 property or equipment.

20     120. Where any violation of training or safety standards
21 occurs, Battalion Chiefs oversee remediation.

22     121. A Battalion Chief has the authority to order remedial
23 training when deficiencies in training or performance are found.

24     122. Any disciplinary action taken by a fire captain against
25 a subordinate is reviewed by a Battalion Chief and forwarded by
26 the Battalion Chief to a Deputy Chief.  UF 25.

27 ///

28 ///

21

1    **Training**

2       123. The six Battalion Chiefs are responsible for

3    implementing training in such matters as individual company and

4    multiple company drills, including urban, suburban, river,

5    equipment maintenance, pumper tending, and hose testing.

6       124. Each Battalion Chief is responsible to teach tactics

7    and strategies on an ongoing basis as a matter of training, and

8    to conduct post-incident reviews.  This includes developing post-

9    incident training on safety issues, tactics and strategies.

10      125. Battalion Chiefs are responsible for updates and

11   continuing education on fire fighting techniques, methods, and

12   the overall mission of delivering service and safety to the

13   public.

14      126. Battalion Chiefs are responsible for scheduling

15   training for fire captains, fire fighters and fire engineers.

16      127. Battalion Chiefs are responsible for instructing fire

17   department personnel about fire fighting and fire control

18   measures.  UF 27.

19      128. Battalion Chiefs conduct lectures and presentations,

20   and give demonstrations on fire protection and fire fighting

21   methods.  UF 30.

22      129. Battalion Chiefs schedule training and demonstrations

23   with instructors.  UF 31.

24      130. Battalion Chiefs participate in actual instruction in

25   various topics with their direct subordinates.  UF 32.

26      131. The Battalion Chiefs maintain all testing records for

27   seven years.  Each Battalion Chief is responsible for testing

28   reports.

22

1    132. Battalion Chiefs are responsible for directing fire

2  prevention programs.  UF 15.

3

4    **Inspections**

5    133. Battalion Chiefs have inspection responsibility over

6  quarters, equipment, and apparatus which encompasses anything

7  pertaining to a fire company.  The fire companies also inspect

8  businesses within their districts, including scheduling

9  inspections and conducting compliance inspections with the

10  Bakersfield version of the Uniform Fire Code; and implementation

11  of safety rules.  The Battalion Chiefs also conduct internal

12  inspections of the fire companies.

13    134. The Battalion Chiefs are responsible for inspecting

14  equipment, apparatus, and quarters to ensure such items are

15  current and operational.

16    135. The Battalion Chiefs have the discretion to determine

17  when to conduct internal inspections.

18    136. The inspections carried out under the command of the

19  Battalion Chiefs are to ensure that equipment apparatus and

20  quarters are current and operational.

21    137. Internal inspections are conducted at least one time

22  per year.

23    138. Battalion Chiefs have the authority to order

24  replacement apparatus and/or equipment.

25    139. Battalion Chiefs are also responsible for maintaining

26  records of operations and inspections.

27    140. Battalion Chiefs are responsible to ensure that fire

28  captains perform assigned inspections.  UF 16.

1    141. Battalion Chiefs inspect records and reports of

2  investigations kept by fire captains.  UF 17.  If Battalion

3  Chiefs determine fire captains are not current on their

4  inspections, Battalion Chiefs have the authority to take remedial

5  action to order further inspection.

6    142. If a Battalion Chief determines a fire captain is not

7  current on inspections, the Battalion Chief may recommend

8  disciplinary action.

9

10    Safety Meetings

11    143. Battalion Chiefs are members of a safety committee,

12  which is comprised of the Fire Chief, Deputy Chiefs, and

13  Battalion Chiefs.  No subordinate officers or fire fighter

14  personnel are on the safety committee.

15    144. The purpose of the safety committee is to discuss

16  accidents and review performance on incidents.

17    145. The safety committee receives a report from the

18  Battalion Chief on safety issues after any incident and develops

19  recommendations that are made to the Fire Chief and Deputy Chiefs

20  regarding safety issues.

21    146. The Battalion Chief is responsible not only to review

22  and evaluate each accident, but to determine blame, impose

23  discipline on those at fault, and to schedule safety meetings

24  throughout the year.

25    147. At least four to five safety meetings are held each

26  year.

27    Budgeting

28    148. In the budget process, Battalion Chiefs make requests

24

1  for equipment and apparatus necessary to the performance of the

2  fire department emergency, suppression, and operating mission.

3      149. In the budget process, Battalion Chiefs determine what

4  the Bakersfield Fire Department needs are relative to equipment

5  and personnel.

6

7      **Fire Suppression Battalion Chiefs' Individual**

8      **Administrative Duties**

9      150. Each Fire Suppression Battalion Chief has

10  administrative duties for matters such as equipment repair, new

11  equipment, non-emergency equipment, and making recommendations on

12  budget matters.  Each Suppression Chief is responsible for

13  different administrative matters.

14      151. Battalion Chief Gary Turner, who became a Battalion

15  Chief after fourteen years, is the commander of Battalion 1.  His

16  administrative duties include testing of fire hoses and

17  miscellaneous equipment, also referred to as loose equipment.

18      152. Loose equipment consists of anything carried on a fire

19  truck.  Loose equipment includes axes, prybars, toolbars,

20  sprinklers, and test nozzles.

21      153. Battalion Chief Turner is responsible for seeing that

22  all hoses meet federal fire inspection standards, but a fire

23  captain, MacIntire, conducts the actual testing.

24      154. Battalion Chief Turner's administrative duties also

25  include supervision of the warehouse, maintenance shop, and

26  basement of the fire station for Battalion 1.

27      155. Battalion Chief Turner spends approximately 10% of his

28  time on administrative duties and 90% of his time on his shift

25

1    command responsibilities for Battalion 1.

2        156. Battalion Chief Gamble became a Battalion Chief after

3    16 years with the department.

4        157. Battalion Chief Gamble's administrative responsibility

5    includes acting as the liaison with the City of Bakersfield

6    department responsible for mobile data terminals ("MDTs"), which

7    are like laptop computers, and are placed on fire trucks.

8        158. Battalion Chief Ken Wiggins, who achieved Battalion

9    Chief rank after 13 years, was an Administrative Battalion Chief

10   for two years and is now a Fire Suppression Battalion Chief.  His

11   administrative duties now include, but are not limited to,

12   weapons of mass destruction, the technical rescue program, and

13   liaison with the large equipment fleet.  He also serves as a

14   liaison to anti-terrorism programs conducted by other agencies.

15       159. Battalion Chief Wiggins oversees the technical reserve

16   program.  He plans training with the guidance of the Fire Chief.

17       160. Battalion Chief Wiggins developed the training and

18   criteria for the technical reserve program with Chief Hartley.

19   The captains perform the actual training duties.  Other agencies

20   are invited to participate in the technical reserve program.

21       161. Battalion Chief Wiggins' administrative duties take 10%

22   to 15% of his time.

23       162. Battalion Chief Darrell Cooper's administrative duties

24   included the chaplain program, the EMS program and stress

25   management (which included de-briefing after traumatic

26

27

28

                                26

1   episodes).[2]

2       163. Battalion Chief Matthew Moore's duties include annual

3   pumper testing.  Chief Moore's subordinates physically conduct

4   the testing, and Chief Moore oversees the testing.

5

6       **Miscellaneous Non-Emergency Duties**

7       164. A Battalion Chief, under Policy 223, assigns personnel

8   to answer public inquiries by telephone and ensures

9   professionalism.  This is independent of the dispatcher function.

10  Policy 323.

11      165. The Battalion Chiefs implement policy 137 regarding

12  safety and health.

13      166. Battalion Chiefs are responsible for insuring the

14  safety of their subordinates.  UF 29.

15      167. Under Policy 145 Battalion Chiefs are responsible for

16  eliminating or reducing diesel smoke in the fire station.

17      168. Battalion Chiefs implement Policy 305 that governs

18  electric power stations including maintenance of back-up

19  generators.

20      169. Battalion Chiefs implement Policy 319 regarding

21  equipment and incident reports discussed above.

22      170. Battalion Chiefs are responsible for the ride-along

23  program under Policy 142.  Battalion Chiefs must approve ride-

24  alongs and allocate resources utilized during ride-alongs.  This

25  also falls under the command responsibility of Battalion Chiefs

26

27

28      [2] Chief Cooper retired approximately one week before the
    trial began.

27

for safety and direction of emergency incidents.  Battalion
Chiefs are responsible to see that ride-alongs are not exposed to
danger in hot zones during fire fights.

171. Battalion Chiefs are responsible and required to be
knowledgeable of all Bakersfield Fire Department's policies and
procedures.  UF 22.

172. Battalion Chiefs schedule the workload for fire
captains including, but not limited to, training and assignments.
UF 37.

173. Battalion Chiefs preside over fire captain round table
meetings to discuss improvement of fire fighting techniques.  UF
39.

174. At all times alleged in the Complaint, Battalion Chiefs
supervised the job performance of more than two subordinate fire
department employees in compliance with the FLSA.  UF 61.  29
C.F.R. § 541.119(a).

175. Unlike captains and subordinate officers, Battalion
Chiefs are not supervised as to their location.  They have
discretion to be anywhere within the City of Bakersfield and
outside the area of their assigned battalion.

176. Battalion Chiefs also review and evaluate contracts
with other agencies including the State of California Office of
Emergency Services, the United States Forest Service, the United
States Bureau of Land Management, and the County of Kern
Helicopter Unit.

177. Chief Gamble has reviewed personnel transfer bids which
have always been upheld by Chief Clayson.

178. The Battalion Chief deals with the corporation yard,

1  repair of apparatus, the daily roster, and monitoring of out-of-
2  service fire companies.

3

4  I.   CAPTAINS' DUTIES

5       179. Battalion Chief Gamble testified that the first-in
6  captain who arrives on-scene at an incident sizes up the
7  situation and assumes command.  The first-in captain then
8  transfers command to a Battalion Chief when he arrives on-scene.

9       180. Battalion Chief Gamble testified that in a hazardous
10 materials incident, a Deputy Chief assumes command.  In all other
11 incidents, a Deputy Chief may assume command, although in
12 practice he almost never does.

13      181. Battalion Chief Gamble testified that a distinction
14 between Battalion Chiefs and captains is that captains evaluate
15 performance of fire engineers and fire fighters and the captains
16 in turn are monitored and evaluated by Battalion Chiefs.

17      182. Battalion Chief Gamble reported that each captain
18 trained approximately two hours per day and the training was
19 monitored by the Battalion Chief.

20      183. Captain Caprioli described the job duties of captains
21 as including response to emergency incidents, to mitigate
22 perceived problems.

23      184. Captain Caprioli described the captain's physical work
24 at incidents.

25      185. Captain Caprioli considered engineers and fire fighters
26 to be "soldiers."  He also considered captains to be "soldiers,"
27 and as a 13 year captain, described himself as "happy where I'm
28 at."  Captain Caprioli likes to physically do the job and does

29

1    not seek the added responsibility and authority of a Battalion

2    Chief, nor the non-involvement in the physical aspects of fire

3    suppression and non-emergency response that are part of a

4    Battalion Chief's responsibilities.

5           186. Captain Jonathan Mylam, who made captain after eight

6    years, noted that captains are not involved in budgets.

7           187. Captain Mylam can authorize ride-alongs without the

8    permission of Battalion Chief.

9           188. Although captains are authorized to give media

10   interviews, normally a Battalion Chief is on the scene and the

11   Battalion Chief acts as the public information officer.

12          189. Captain Mylam trains and reports on training of fire

13   fighters and engineers.  In addition, evaluations of fire

14   fighters and fire engineers are performed by captains.

15          190. A fire captain has no more disciplinary authority than

16   to issue a written or oral reprimand to a subordinate.  A captain

17   has no involvement in higher levels of discipline.

18          191. One of Captain Mylam's duties is to enter into the

19   "GUI" system, on the computer, the attendance roster for any

20   particular day.  The Battalion Chief, who has more experience and

21   ultimate responsibility in ensuring constant-staffing, reviews

22   the roster before the final version is submitted.

23          192. Captain Mylam participates in captain meetings at

24   stations, which are held with the Battalion Chiefs.  The

25   Battalion Chiefs pass along information related to equipment,

26   maintenance, training, and scheduling for inoculations and flu

27   shots.

28          193. Captain Mylam's perception is that there is a clear

1  demarcation between command level staff and battalion level

2  staff.  Captains work under the day-to-day direction of Battalion

3  Chiefs.  Battalion Chiefs interpret and implement policy passed

4  down from command staff.

5  194. Deputy Chief Hutton described that Battalion Chiefs'

6  disciplinary authority includes exercising independent judgment

7  to order personnel off the fire line.  By contrast, a fire

8  captain may recommend discipline, but cannot take direct

9  personnel action (other than issuing an oral or written

10 reprimand) without approval of a Battalion Chief.

11

12 **J.   ACCOUNTING DEPARTMENT WITNESS**

13 195. Sandra Jiminez, an accounting supervisor for the

14 Department of Finance for the City of Bakersfield, testified what

15 the parties have stipulated to: Battalion Chiefs are salaried

16 employees and their salaries exceed $445.00 per week.

17

18 **II.   CONCLUSIONS OF LAW**

19 **A.   LEGAL STANDARD**

20 196. The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

21 201-219 (1994), requires an employer, including state and local

22 governments, to compensate an employee for overtime work longer

23 than 40 hours per week at a rate of at least one-and-one-half

24 times the employee's regular rate of pay.  *See id.* at §

25 207(a)(1); *Auer v. Robbins*, 519 U.S. 452, 457 (1997) ("In 1974

26 Congress extended FLSA coverage to virtually all public-sector

27 employees, Pub.L. 93-259, § 6, 88 Stat. 58-62, and in 1985 we

28 held that this exercise of power was consistent with the Tenth

1 Amendment. [citation]").

2    197. The FLSA has a special section for firefighters, which
3 allows a work period of seven to twenty-eight days, with pro-
4 rated hourly thresholds, in order to account and allow for the
5 twenty-four hour shifts most firefighters work.  29 U.S.C. §
6 207(k).  If firefighters work overtime according to the formula
7 set forth in that section, they are entitled to overtime pay.

8    198. However, "bona fide executive, administrative, or
9 professional" employees are exempt from the FLSA's overtime
10 provisions.  *Id*. at § 213(a).

11    199. Here, the parties dispute whether the Battalion Chiefs,
12 are exempt from the FLSA's overtime provisions under the
13 executive exemption.

14    200. Defendant City, as the employer, has the burden to
15 prove that the Battalion Chiefs were exempt "executive" employees
16 within the meaning of 29 U.S.C. § 312(a)(1).  *Corning Glass Works*
17 *v. Brennan*, 417 U.S. 188, 196-7 (1974).

18    201. Two tests are employed to determine whether an employee
19 falls within the executive exemption, the "long test" and the
20 "short test."  29 C.F.R. §§ 541.1, 541.119(a).

21    202. The "long test" applies when the employees earn less
22 than $455 per week.  *Id*. at §§ 541.1(f), 541.119(a).  Under the
23 "long test," an employee "employed in a bona fide executive
24 capacity...shall mean any employee:"

25        (a)  Whose primary duty consists of the management of the
26             enterprise in which he is employed or of a customarily
                 recognized department or subdivision thereof; and
        (b)  Who customarily and regularly directs the work of two
27             or more other employees therein; and
        (c)  Who has the authority to hire or fire other employees
28             or whose suggestions and recommendations as to the

32

hiring or firing and as to the advancement and
promotion or any other change of status of other
employees will be given particular weight; and
(d)   Who customarily and regularly exercises discretionary
powers; and
(e)   Who does not devote more than 20 percent...of his hours
of work in the workweek to activities which are not
directly and closely related to the performance of the
work described in paragraphs (a) through (d) of this
section...; and
(f)   Who is compensated for his services on a salary basis
at a rate of not less than $155 per week....

*     *     *

*Id.* at § 541.1(a-f).

203. The "short test" applies when the employees earn more
than $455 per week and are paid on a salary basis.[3]  *Id.* at §
541.1(f), § 541.119(a).

204. Under § 541.118(a), "salary basis" means "if under [the
employee's] agreement, he regularly receives each pay period on a
weekly, or less frequent basis, a predetermined amount
constituting all or part of his compensation, which amount is not
subject to reduction because of variations in the quality or
quantity of the work performed."

205. The parties do not dispute that the Battalion Chiefs
earn more than $455 per week and are paid on a salary basis.  The
"short test" applies.  The only remaining issue under the "short
test" is whether the "duties test" is satisfied to qualify
Battalion Chiefs for exempt status as an executive employee,

---

[3] Additional compensation for otherwise "exempt employees"
beyond salary in the form of additional cash payments complies
with the requirements of 29 C.F.R. § 541.118.  UF 65.  The
Department of Labor's Field Operation Handbook authorized extra
compensation to be paid for overtime to an exempt employee on any
basis, including straight time or a flat sum without loss of the
exempt status.  UF 70.

1  because the employee's primary duty is managerial.  Stipulation

2  No. 1.

3       206. Under the "short test," an employee will be deemed

4  employed in an executive capacity if, in addition to the

5  fulfillment of the salary proviso, the employee's "primary duty

6  is management of the enterprise in which the employee is employed

7  or of a customarily recognized department or subdivision

8  thereof."  29 C.F.R. § 541.100(a).

9       207. An employee's "primary duty" is "the principal, main,

10  major, or most important duty that the employee performs."  29

11  C.F.R. § 541.700(a).

12       208. Determining whether an employee's "primary duty" is

13  executive in nature and therefore exempt involves the

14  consideration of several factors.  First, the amount of time

15  spent performing the duties should be considered.  "[E]mployees

16  who spend more than 50 percent of their time performing exempt

17  work will generally satisf[y] the primary duty requirement."  *Id*.

18  at § 541.700(b).  "Time alone, however, is not the sole test, and

19  nothing in this section requires that exempt employees spend more

20  than 50 percent of their time performing exempt work."  *Id*.

21       209. Other factors to consider in determining whether an

22  employee's primary duty is managerial include, but are not

23  limited to: (1) the relative importance of the managerial duties

24  as compared with other types of duties; (2) the frequency with

25  which the employee exercises discretionary powers; (3) the

26  employee's relative freedom from supervision; and (4) the

27  relationship between the employee's salary and the wages paid

28  other employees for the kind of nonexempt work performed by the

supervisor.   29 C.F.R. § 541.700(a); *Shockley v. City of Newport News*, 997 F.2d 18, 26 (4th Cir. 1993); *see also Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1113 (9th Cir. 2001).

210. "Management" is defined at 29 C.F.R. § 541.102, and includes, but is not limited to:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employee's productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

211. "Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 [the executive exemption] are otherwise met."  29 C.F.R. § 541.106(a).  "Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success for failure of business operations under their management while performing the nonexempt work."  *Id*.

212. Each exemption case is fact specific, and is decided on a case-by-case basis.  The Ninth Circuit has not yet dealt directly with the issue of whether the duties of higher-ranking firemen or police officers fall within the executive exemption of the FLSA.

213. The Ninth Circuit has found, however, that managers of

35

1   a recreational vehicle (RV) park were executives under the FLSA

2   where they engaged in exempt activities, including interviewing,

3   training, and disciplining other workers; were substantially free

4   from supervision (despite having to adhere to company policies);

5   were in charge of making relatively important day-to-day

6   decisions without much participation from the park's owner; were

7   on-call 24 hours a day; and lived in on-site apartment.  *Baldwin*,

8   266 F.3d at 1113-6.  The Court found the managers were executives

9   despite that they spent over fifty percent of their time doing

10  non-exempt work, such as maintenance and cleaning of the park.

11  The Court weighed the relative importance of the RV park

12  managers' managerial duties against their nonexempt duties and

13  determined that the managerial duties were of greater importance

14  to their jobs.  *Id*. at 1114-5.

15       214. In *Wainscoat v. Reynolds Elec. & Eng'g Co.*, *Inc.*, 471

16  F.2d 1157, 1161-2 (9th Cir. 1973), the Ninth Circuit found that

17  operations, drilling, and rig superintendents' primary

18  responsibility was managerial where they: were responsible for

19  planning, coordinating, and supervising the directional drilling

20  program and the work of the drillers on a twenty-four hour basis;

21  were responsible for liaising with various agencies; determined

22  what tools and equipment would be used and the manpower required

23  to perform a drilling job; were required to plan and coordinate

24  the directional drilling operation with their superior

25  superintendent; were responsible for on-the-job training of

26  directional drillers; and participated in frequent conferences

27  with other supervisory personnel in which job problems, manpower,

28  and availability of equipment were discussed and decisions made.

1  *Id*. at 1161.   The Court found the superintendents' duties were

2  primarily managerial despite that much of their time (although

3  not quite fifty percent) was spent performing manual labor.   The

4  Court reasoned that the manual labor was, in major part, in

5  performance of their highly technical and discretionary duties

6  which their expertise qualified them to perform, and in any event

7  their managerial and supervisory duties were more important than

8  the manual tasks they performed.   *Id*. at 1162.

9      215. Other Circuits have dealt with the executive exemption

10  issue in the law enforcement and/or fire suppression context.

11  While decisions from other Circuits are not binding, they are

12  instructive as to the factors to consider.   Cases with similar

13  fact patterns can also serve to illustrate the relative

14  persuasiveness of particular facts in determining whether an

15  employee's "primary duty" is managerial, which ultimately leads

16  to the finding of an exemption.

17      216. In *Keller v. City of Columbus, Ind.*, 778 F. Supp. 1480,

18  1490-1 (S.D. Ind. 1991), fire captains and lieutenants were

19  exempt under the executive exemption where they: were responsible

20  for ensuring equipment, property and personnel are ready for

21  action; generally supervised firefighters and directed

22  firefighters at fires; attended planning meetings; and evaluated

23  the performance of firefighters.   The *Keller* Court found an

24  executive exemption even though the fire captains and lieutenants

25  spent part of their time engaged in "many of the same manual

26  tasks that they direct other firemen to do."   *Id*. at 1489.   The

27  Court found the relative importance of the fire captains and

28  lieutenants' managerial duties outweighed the significance of the

1  manual tasks they performed, and also that the managerial duties
2  took a greater portion of the captains and lieutenants' time.
3  *Id*.

4      217. Similarly, in *Quirk v. Baltimore County, Md.*, 895 F.
5  Supp. 773, 788 (D. Md. 1995), the Court found that emergency
6  medical services captains ("EMS captains") were exempt under the
7  executive provision where they: spent almost all of their time
8  directing personnel in the field; performed administrative tasks;
9  handled sick leave; were authorized to remove subordinates from
10 duty; reported unsatisfactory performances of subordinates; wrote
11 disciplinary action forms; and made recommendations regarding
12 discipline of subordinates which were almost always followed by
13 the captains' superiors.  *Id*. at 787.

14     218. In *Adams v. United States*, 44 Fed. Cl. 772, 782, 785
15 (Fed. Cl. 1999), the Court found that U.S. Border Patrol Field
16 Operations Supervisors ("FOS") fell within the executive
17 exemption where they: directed emergency responses in the field:
18 ordered subordinates to perform (or to cease performing) any
19 task; orally reprimanded subordinates for poor work; reassigned
20 subordinates from one area within the FOS station's field of
21 operation to another; granted unscheduled leave; ordered
22 overtime; and evaluated subordinates' performance.  The Court
23 reasoned that the FOS's primary duty was related to strategy: the
24 FOS's "real function in the field is to be aware of who is doing
25 what, where, and being prepared to make decisions about
26 reallocation of resources within the entire station."  *Id*. at
27 782.

28     219. In *Shockley*, 997 F.2d at 26-7, the Fourth Circuit found

1   that various categories of police sergeants were executives under

2   the FLSA where they: were responsible for making adjustments for

3   sick personnel and determining which district their officers

4   would patrol; monitored the radio and backed up subordinate

5   patrol officers in the field when required; had the authority to

6   overrule a dispatcher and change assignments; allocated and

7   managed police resources to insure police services were being

8   provided in the patrol neighborhoods; and were responsible for

9   officer discipline.  *Id.* at 27-9.

10       220.  In *Masters v. City of Huntington*, 800 F. Supp. 363, 367

11  (S.D.W.V. 1992), the Court found that the primary duty of the

12  fire department's shift captains was managerial and that the

13  captains were exempt under the executive provision where they

14  were responsible for ensuring that all firefighting equipment was

15  in good order and in condition for immediate use; were

16  responsible for ensuring that all firefighters had reported to

17  duty, and reported those firefighters who were absent from their

18  shifts; maintained the station log book in which all of the

19  station's activities were recorded; maintains an inventory of

20  property; were responsible for seeing that required training was

21  conducted; evaluated the performances of subordinates; imposed

22  penalties involving loss of privileges; and took command of fire

23  emergency situations at smaller fires.  *Id.* at 365-6.  The court

24  held the shift captains were executive employees, even though

25  they lacked the authority to hire and fire and despite that they

26  occasionally performed manual tasks (i.e., non-exempt work).  *Id.*

27  at 365.  The court stated:

28       [T]he city has not employed these officers on the basis of

39

their proficiency in waxing floors or cleaning gutters.  In the sense of their most important or significant duty, having charge of and ultimate responsibility for the efficient operation of a station house and the direction of their crews at fire scenes, clearly management functions, constitute the primary duties of station captains.  The significance of manual or non-exempt work engaged in by these officers pales when compared with their responsibility for the readiness of men and equipment and the direction of firefighters at the scene of a fire.

*Id*. at 366.

221.  The Tenth Circuit found that fire captains were not exempt under the executive provision where: it was not shown that more than fifty percent of their time was spent in management functions; the captains did not have authority to call additional personnel to the fire scene; the captains did not set work schedules for other employees; and the captains participated in manual labor and routine station duties.  *Dept. of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287-8 (10th Cir. 1994).

222.  Plaintiff argues that the executive exemption does not apply to the Battalion Chiefs because they must be delegated express authority or direction from the Command Staff before proceeding with the implementation of a decision.  Plaintiff's argument is not very persuasive, however.  Even if the Battalion Chiefs need approval for certain decisions from the Deputy Chiefs or the Fire Chief, in the vast majority of cases such approval is only a formality.  As to non-emergency duties and decisions, Battalion Chiefs' incident command, budget recommendations, and recommendations regarding disciplinary actions (i.e., those more serious than oral reprimands), are not second-guessed and are generally followed by their superiors.  As Incident Commanders, Battalion Chiefs have complete and autonomous executive authority

over emergency and fire suppression in management of incidents. During emergencies, the Battalion Chiefs' decisions are not second-guessed by subordinates, the Deputy Chiefs, or the Fire Chief.

223. Plaintiff also argues that Battalion Chiefs fall within the Department of Labor's recently-released guidelines regarding the overtime exemptions under the FLSA as they apply to "First Responders."  The Guidelines state that First Responders generally do not qualify as exempt employees.  The Guidelines include among its definition of First Responders "fire fighters...who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire...victims...."[4]

_____

[4] The Guidelines further provide in relevant part:

> Police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees ("first responders") who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witness; interrogating and fingerprinting suspects; preparing investigative reports; and other similar work are not exempt under Section 13(a)(1) or the regulations are thus are protected by the minimum wage and overtime provisions of the FLSA.

> First responders generally do not qualify as exempt

41

The Guidelines list the titles of first responders who physically perform law enforcement, medical emergency, firefighting, and other similar duties.  Plaintiff's argument is not persuasive. It was shown during trial that, while Battalion Chiefs may have physically fought fires earlier in their careers, once they achieve the level of Battalion Chief they no longer "pull hose" or "swing an axe."  Battalion Chiefs are only "first responders" to the extent they are required to be on-duty twenty-four hours per day and are required to assume command of emergency calls when on duty.  Once on the scene of a fire or some other emergency, Battalion Chiefs act as Incident Commanders and develop the general strategy for dealing with the emergency. Battalion Chiefs hold positions of and exercise executive authority based on their advanced experience, expertise, skills, and judgement, in managing all aspects of emergency situations. Their duties do not fall within the Department of Labor's "First Responder" Guidelines because Battalion Chiefs do not perform the physical task of fighting fires.

224. Plaintiff also argues that Battalion Chiefs performed substantially the same duties as Captains.  This is categorically untrue.  The most significant distinction between Captains' duties and Battalion Chiefs' duties is that Captains physically

---

executives because their primary duty is not management.

\*    \*    \*

(U.S. Department of Labor, <http://www.dol.gov/esa/regs/compliance/whd/fairpay/fs17j_first_r esponders.htm>, accessed March 22, 2005)).

1  fight fires and Battalion Chiefs do not.  The greatest similarity

2  between their respective duties is that Captains spend time

3  evaluating their subordinates (i.e., the firefighters and fire

4  engineers), just as Battalion Chiefs spend time filling out

5  evaluations of the captains.  Captains also have a role in

6  training.  They spend about 1-2 hours each day training their

7  subordinates.  The distinction between Captains' training duties

8  and Battalion Chiefs' training duties, however, is that Battalion

9  Chiefs oversee the training and are generally responsible to see

10 that training is performed, while Captains are responsible for

11 actually conducting the training.  The training and instruction

12 that Battalion Chiefs perform consists primarily of classroom

13 instruction.  Beyond that, Battalion Chiefs are responsible for

14 scheduling training drills, devising testing programs, conducting

15 executive post-incident reviews, and maintaining records of

16 training drills conducted.  Captains make reports regarding the

17 training they conduct, but the Battalion Chief is ultimately

18 responsible for maintaining the records of training and ensuring

19 that the required training is conducted.

20 225. Overall, the evaluations and other administrative tasks

21 of captains do not rise to the same level of importance or

22 responsibility and do not take the same amount of time as the

23 administrative duties of a Battalion Chief, which include

24 ultimate responsibility for ensuring constant staffing and first-

25 in coverage; overseeing training and inspections, attending

26 safety meetings, and drafting budgets.

27 226. Defendant argues that Battalion Chiefs fall within the

28 executive exemption because their primary duties are managerial.

43

1   Defendant emphasized the Battalion Chiefs' role in the
2   preparation and drafting of policy.  There was testimony that
3   only three current Battalion Chiefs actually drafted policies.
4   Chief Hartley, with Chief Greener, drafted the Awards &
5   Recognition policy.  Chief Moore drafted a parking policy.  That
6   a few Battalion Chiefs drafted several policies does not
7   establish that Battalion Chiefs are responsible for drafting of
8   the Bakersfield Fire Department Policies and Procedures
9   (Defendant's Exhibit H).

10       227. Defendant also argues that the Battalion Chiefs
11  contribute to setting rates of pay (which is one of the factors
12  included in 29 C.F.R. § 541.102, the provision that describes
13  "managerial duties") by calling a subordinate on-duty for
14  overtime.  Defendant argues that affecting the number of hours
15  subordinates work reflects their rates of pay.  While it is true
16  that a firefighter is paid a greater amount when working a
17  greater number of hours, Battalion Chiefs have the discretion to
18  call firefighters back to overtime duty.  There was no evidence
19  that Battalion Chiefs actually set the dollar amount their
20  subordinates are paid.  Battalion Chiefs do, however, have the
21  discretion to manage the schedules of their subordinates,
22  including ensuring constant staffing, approving overtime and
23  vacation, and ordering overtime.  These tasks are exempt
24  managerial functions.

25       228. The issue of managing subordinates' schedules relates
26  to Defendant's arguments regarding why the Battalion Chiefs'
27  primary duties are managerial.  Defendant emphasized Battalion
28  Chiefs' responsibility for "constant staffing" and for "first-

44

1   ins" personnel.  Constant staffing and first-in coverage refers

2   to the necessity that the Bakersfield Fire Department's area of

3   responsibility is covered.  The Battalion Chiefs are executives

4   responsible for ensuring coverage is complete and are responsible

5   for reviewing shift rosters that include the names of the

6   firefighters on-duty for those shifts.

7       229. Defendant argues that Battalion Chiefs have the

8   authority to hire and fire because they do so for the firefighter

9   reserve program.  Battalion Chiefs do not, however, have

10  regularly exercised authority to hire and fire full time

11  firefighters.

12      230. Defendant argues that the following Battalion Chief

13  duties were managerial in nature: 1) evaluations of captains; 2)

14  reviewing captains' evaluations of their own subordinates; 3)

15  disciplining of subordinates; 4) making disciplinary

16  recommendations; 5) ensuring the battalion complies with training

17  requirements; 6) submitting budget recommendations for equipment

18  and supplies (that are almost always followed); 7) overseeing

19  internal and external inspections; and 8) Incident Commander

20  duties in emergency and firefighting situations.  These arguments

21  are persuasive.

22      231. Under the applicable law, the issue is whether the

23  Battalion Chiefs' "primary duty" is "managerial."  Battalion

24  Chiefs spend minimal, if any, of their time performing non-exempt

25  work, such as physical labor during fighting fires.  While

26  Battalion Chiefs are required to be on-duty 24 hours per day, and

27  respond to emergencies when called, this is not necessarily a

28  factor considered in applying the "primary duty" test.  They do

45

1   so in a command capacity.  Two of the Battalion Chiefs seeking an

2   exemption, the Administrative Battalion Chief and the Training

3   Battalion Chief, do not work 24-hour shifts and instead work a

4   40-hour week, Monday through Friday, 8:00 a.m. to 5:00 p.m.

5        232.  The following duties of the Battalion Chiefs fall into

6   the C.F.R. definition of managerial: 1) overseeing training, 2)

7   conducting of inspections, 3) approving and ordering overtime in

8   their constant staffing functions, 4) evaluating the performance

9   of captains, and 5) making budget recommendations as to

10  acquisition of equipment and supplies.  Most importantly,

11  Battalion Chiefs perform Incident Commander duties at the scenes

12  of emergencies, which include directing the work of the fire

13  captains, firefighters, and fire engineers; and implement

14  strategy to commit and control the resources brought to bear on

15  each emergency situation to ensure the safety of the fire

16  personnel and the public.

17       233.  The duties of the Administrative Battalion Chief are

18  primarily managerial.  The Administrative Battalion Chief

19  supervises various programs with the fire department, including

20  the maintenance division, the technical rescue program, weapons

21  of mass destruction preparedness and training, and large

22  equipment.  The Administrative Battalion Chief oversees the EMS

23  program, including training and acquisition of equipment. Most

24  importantly, the Administrative Battalion Chief is the public

25  information officer of the fire department, and regularly

26  exercises discretion in drafting press releases and making

27  statements to the media, speaking for the Bakersfield Fire

28  Department.

234. The Training Battalion Chief serves in a wholly managerial capacity.  He is responsible for ensuring the Bakersfield Fire Department's training plans meet local and federal laws and regulations.  The Training Battalion Chief has the discretion to change the Bakersfield Fire Department's training program so that it conforms to laws and regulations that might have changed.  The training budget apparently does not vary much from year to year; however, the Training Battalion Chief provides recommendations and input for the budget that are generally followed.

235. Not only do Battalion Chiefs' duties fall within the definition of "managerial," as specified by 29 C.F.R. § 541.102, their exempt duties are more important than any non-exempt duties.  First, Battalion Chiefs spend the vast majority (over 90%) of their time conducting managerial tasks, as outlined in 29 C.F.R. § 541.700(b).  Second, other factors employed by courts to resolve the "primary duty" question are also met here.  The Battalion Chiefs' managerial duties are their most important duties; they are free from supervision (other than occasionally requiring formal approval from the Command Staff regarding certain decisions); and they regularly exercise independent and ultimate command discretion in directing Bakersfield Fire Department fire suppression and emergency response activities and making executive decisions.

236. Because all Battalion Chiefs' duties and job functions are overwhelmingly managerial in nature, they fall within the executive exemption to the FLSA.  Bakersfield Fire Department Battalion Chiefs are not entitled to overtime pay.

47

1    237. Cases with very similar fact situations decided by

2 other District and Circuit Courts have found that higher-level

3 fire department and law enforcement officers fall within the

4 executive exemption under the FLSA.  *Keller*, 778 F. Supp. at

5 1490-1; *Quirk*, 895 F. Supp. at 788; *Adams*, 44 Fed. Cl. at 785;

6 *Shockley*, 997 F.2d at 26-7; *Masters*, 800 F. Supp. at 367.  In the

7 distinguishable Tenth Circuit case where an exemption was not

8 found, fire captains had very little discretionary authority, and

9 spent much of their time conducting manual labor.  *Sapulpa*, 30

10 F.3d at 1287-8.

11    238. Cases decided in the Ninth Circuit suggest that the

12 Battalion Chiefs' duties and responsibilities are considered

13 managerial, including but not limited to: independent decision-

14 making authority; responsibility for developing work plans;

15 directing the work of subordinates; responsibility for training;

16 and participation in meetings with other supervisors.  *Baldwin*,

17 266 F.3d at 1113; *Wainscoat*, 471 F.2d at 1161-2.

18    239. The Battalion Chiefs have responsibility and extensive

19 discretion to bring all their skills and experience of not less

20 than ten years to incident command, administrative duties, and

21 the training function.

22    240. This lawsuit is unintentionally demeaning to the high

23 level of managerial experience, skill, judgment, background and

24 training Battalion Chiefs must possess to do their jobs.  The

25 overtime compensation sought is too high a price to pay for

26 diminishing the command status, experience, education, and

27 seasoned judgment that a Battalion Chief must possess.  These

28 officers are significantly more experienced than captains.

1    241. As Captain Caprioli testified, captains and below are

2    "soldiers" who are on-line in the field taking direct action

3    under the command of the Battalion Chief.  The Battalion Chief is

4    not a line officer who engages in direct activities, but rather

5    is a commander who exercises discretion and judgment, marshals

6    resources, formulates strategy, chooses and implements tactics,

7    and makes the ultimate supervisory and management decision that

8    can only be made by a command level officer.  There is a

9    significant difference in terms of judgment, training, education,

10   and experience between Battalion Chiefs and their subordinates in

11   the rank of captain and below, for very good reason.  It is

12   crucial that commanders of mature and extensive experience and

13   judgment serve in the important and ultimately responsible roles

14   as the "field generals" at incidents.  By analogy to the

15   military, the Battalion Chief is a field grade commander who,

16   although at the scene of the action, is a decision-maker with

17   strategic and tactical authority and command authority for the

18   direction and carrying out of the fire department's mission in

19   the field.

20

21                      III.  <u>CONCLUSION</u>

22       For all the reasons stated above, Plaintiffs shall take

23   nothing by their complaint and judgement shall be entered in

24   favor of Defendants and against Plaintiff.  Counsel for

25   Defendants shall submit a form of judgement consistent with these

26   ///

27   ///

28   ///

findings within five days following the receipt of service of these findings by the Clerk of Court.

DATED:  April 19, 2005.

/s/ OLIVER W. WANGER

_____
    Oliver W. Wanger
UNITED STATES DISTRICT JUDGE